Bissell, J.,
delivered the opinion of the court.
Knowles being then the owner of what is called the “ Ike ranch,” on the north side of Platte river, in Arapahoe county, *266 on the second of November, 1885, leased it to Leggett, the appellee, for a term, of years, at an agreed rental, convenanting on his part “ to furnish him with sixty inches of water in the irrigating ditch on said premises.” Leggett was to keep the ditch in repair, seed the land with clover and timothy, and leave it with a good stand and in good condition at the end of his term. There were sundry other conditions in the lease which are unimportant. Leggett occupied the premises for some years, but did not pay the whole of the agreed yearly rental, basing his refusal on Knowles’ failure to furnish water according to the terms of the convenant. Pie brought this action to recover his damages, set up the contract in so far as it related to the water, averred the injuries and prayed judgment accordingly. The owner defended and relied partly on performance, partly on Leggett’s failure to perform the contract on his part in the preparation and care of the land, and alleged a release on Leggett’s part of the covenant to supply the water. He set up, by way of counterclaim, the notes for the unpaid rent, and prayed the appropriate judgment. He likewise filed a cross complaint against Leggett and The Platte River Mill & Ditch Company, wherein he set up the obligation of the company to furnish him water as a shareholder in the corporation, stating the obligation of the company to furnish the' water with which he had agreed to supply Leggett. In this cross complaint he averred Leggett’s knowledge of the source of supply when the lease was executed, and Leggett’s reliance on his right to procure water from the company. The purpose of this cross complaint was to compel Leggett to litigate with the Ditch Company and recover his damages from them. Leggett proved all the general facts set out in his complaint, which were not admitted in the answer, and made an attempt to establish his injury. The chief difficulty springs from his neglect or failure to prove what was essential to entitle him to judgment. It is quite apparent that proof of the lease and of the failure to supply water according to the agreement would not suffice. Of necessity, he must prove some *267 injury. To meet this burden, he offered evidence which tended to show the amount of crop which could have been grown on the land had the water been furnished, and the value of that crop in the market at the time. He went no further than to show the probable total crop and its market value. The other essential items of the cost of raising and harvesting it, transporting it to market, and all other expenses ordinarily incident to raising and harvesting timothy and clover, were left unproven. Thus the only basis furnished the jury was the tonnage and the market value. The trial resulted in a judgment in his favor for $715.
The appellant presents several questions for our consideration, some of which must be disposed of in view of the succeeding trial, though they are not of themselves sufficient to reverse the case. The appellant insists the court erred in striking out his cross complaint. We cannot accede to this position. Whatever may have been Knowles’ rights as between him and the Hitch Company, as corporation and shareholder respectively, the record fails to disclose anything which renders it necessary for Leggett to litigate that question or to take part in that dispute. There was no privity between Leggett and the Ditch Company, and, whatever may have been his knowledge as to the source of the water supply, he was compelled to look no further than to the contracting party for his damages. Leggett’s contract was with Knowles. The breach being established, a cause of action arose; but it did not give Leggett a right to sue the company, nor was he compelled under the circumstances'to look to the corporation for redress. If he had brought suit against the company, it would have had a perfect defense in the denial of any contract between them. Under these circumstances, it is not easy to see how the company can be brought into the present litigation, or Leggett be compelled to have his issue incumbered by the trial of the controversy between the company and one of its shareholders. Whether, under the existing circumstances, Knowles could have given the corporation notice of the suit, and required them to *268 appear and defend, so as to bind the company by the amount of any judgment which Leggett might recover, is a question which need not be considered, anticipated or determined. Leggett could not be forced to try the question with the Ditch Company, or have his suit embarrassed by the controversy between it and Knowles. The determination of Knowles’ rights against the Ditch Company was in no manner essential to the settlement of Leggett’s claim, and the provision of the code which permits the introduction of a third person into a suit where there cannot be otherwise a complete determination of the controversy has no application whatever to a case of this description. There is no allegation in the answer, nor for that matter in the cross complaint, to the effect that Leggett agreed to look to the company for his water. Whatever knowledge he may have had respecting the source of the supply cannot affect the construction of the contract, nor can it be made operative as a limitation on the agreement. The court was right in striking out the cross complaint.
Eliminating this pleading from our further consideration, the position that the contract is to be construed with reference to Knowles’ relation to the company is easily disposed of. The matter is entirely settled by a reference to the answer, which only sets up a subsequent agreement on Leggett’s part to look to the Ditch' Company for his water, to take thirty inches in place of sixty, and to release Knowles from any liability under his contract. This was the only issue respecting this part of the dispute which Knowles tendered. This is disposed of by the very simple statement that there was no evidence tending to show the release, and the other matters went to the jury. The court was entirely light in instructing the jury to dismiss from their consideration all the evidence on that subject. It was wholly insufficient to establish the release.
The defendant undoubtedly offered testimony tending to show Leggett’s failure to properly seed the land or care for his crop, but this evidence went to the jury under proper *269 instructions, and there is nothing in the record which would lead us on this ground to overturn the judgment.
The appellant objects to certain instructions, which are possibly open to criticism. The balance of the charge is presented neither in the abstracts nor in the briefs, and we feel quite excused to make any extended reference to the charge either by way of analysis or approval. It is, of course, quite impossible to determine whether there is error in a given instruction without the entire charge before us, that we may therefrom determine whether what is complained of has been modified or is in any wise changed by subsequent instructions which were properly given and are unobjectionable. We have taken the trouble, however, to examine the record, and find that the court directly instructed the jury that if the water was furnished for any of the four years specified, the defendant could recover of the plaintiff on the note or notes which became due in the year or years for which the water was furnished. Taken in connection with those complained of, it thoroughly informed the jury with reference to their duty in the premises, and the two taken together seem to be entirely unobjectionable.
The only remaining error respects the damages. There is probably no class of cases wherein it is more difficult to furnish a sufficient basis for the jury’s judgment. The matter has very recently received consideration in this court, and the rules have been quite clearly and fully expressed in two opinions: Colo. Con. Land & Water Co. v. Hartman, 5 Colo. App. 150; Con. Home Supply Ditch & R. Co. v. Hamlin, 6 Colo. App. 341.
The learned writer very accurately stated the different methods which might be adopted. It was, of course, in those cases conceded that no one method need be adopted to the exclusion of the others, but that either one or all might be resorted to as the necessities and circumstances of the particular case might require; the sole thing aimed at being to give the injured party compensation for his loss. It is impossible to understand how the jury arrived at their verdict. *270 The lease was for one hundred and twenty acres of land, which was to be sowed in timothy and clover. The letting covered a period of years, and was on a rental, speaking generally, of about $600 a year. It had apparently run for about five years at the time of the trial, whereby rent to the extent of from $2,400 to $3,000 had accrued. The water was coneeded to have been furnished for a part of the period, and some crops were raised. Just how the jury could wipe out the rent account, give the tenant damages over, without some data on which to show that the tenant had been damaged to this extent, is impossible to apprehend. Manifestly the jury did not take the plaintiff’s statement as being literally true, for it would show him entitled to recover for the loss of upwards of two thousand tons of timothy and clover, of which the market value was somewhere from fifteen to twenty dollars per toa. These difficulties are simply suggested to show the danger of submitting matters of this description to a jury without offering some intelligible basis on which they may act. The tenant could not recover for the value of the total crop which might have been raised, for this result would not take into account the cost of the seed, the labor of planting it, caring for it or harvesting and marketing it. All these elements must be considered in order to determine what is the real and true measure of the tenant’s damages. The evidence does not make out a case in which the jury could find a verdict based on the probable amount of the crop which might have been raised in any one year and the probable loss of it by reason of the want of water. Viewed from this standpoint, the plaintiff failed to show how many acres he seeded, how much seed he put into an acre, what the yield from that amount of seed might have been, whether it started and failed to come to maturity for the want of irrigation, and in general wholly came short of establishing such a performance on his part as to permit him to charge the landlord with the resulting failure. These things are simply suggestions of the difficulties which beset the ease as the plaintiff made it. The difficulties perhaps may be wholly overcome on the succeed *271 ing trial, wherein, if the plaintiff furnishes the data and the court properly instructs the jury with respect to his right of recovery, any verdict which he may obtain may he upheld. The proof falls so far short of the legal requisites, whatever method of computing damages may be resorted to, that the court does not feel justified in stating what particular rule should be adopted. When the case is again tried, and the plaintiff puts in proof which will entitle him to a verdict under any one or more of the rules which were suggested in the two cases cited, the trial court can easily protect the landlord’s rights and assure the tenant the relief to which he may be entitled.
The total want of evidence on which to rest the verdict compels us to reverse the case. It will accordingly be reversed and sent back for a new trial in conformity with this opinion.

Reversed.